McClellan *v.* Rowell

No. 40631 January 20, 1958 99 So. 2d 653

*Smith, O'Hare & Smith,* Cleveland, for appellant.

*Charles C. Jacobs, Jr.,* Cleveland, for appellee.

LEE, J.

This is a controversy between Albert P. McClellan and Mrs. Hazel Blaine McClellan Rowell over the custody of their five-year old daughter, Connie Darlene McClellan.

On September 21, 1956, McClellan filed in the Chancery Court of the Second Judicial District of Bolivar County, in the case styled Hazel Blaine McClellan v. Albert McClellan, the original divorce action, what he designated as "Petition of Albert McClellan for modification of decree rendered herein on the 28th day of October 1952, and for custody of his daughter, Connie Darlene McClellan, and for writ of habeas corpus." The petition set out allegations in great detail purporting to show that Mrs. Rowell was unfit to have the custody of the child, and that he was a fit and suitable person therefor, and that the best interest of the little girl would be promoted by a transfer of custody to him.

The answer of Mrs. Rowell set up that McClellan by a ruse, trick, device and scheme, fraudulently decoyed her and her child into the State of Mississippi, and that the court should not take jurisdiction of the cause in the face of such fraudulent device. Her answer also denied in detail all of the material allegations of the petition, and averred that she was a suitable person to have custody of the child.

The court heard all of the evidence both as to jurisdiction and as to the best interest of the child insofar as her custody was concerned. There was in fact no substantial dispute as to McClellan's stratagem to procure the presence of Mrs. Rowell and her daughter in the State.

The evidence on the question of jurisdiction was substantially as follows: McClellan called over the telephone

Mrs. Aaron P. Jones, a neighbor of Mrs. Louise Nardini, who is a sister of Mrs. Rowell, in Bossier City, Louisiana, on the evening of September 20, 1956, and informed her that his mother had had a heart attack, was not expected to live, and that she wanted to see Connie, her grandchild. He requested Mrs. Jones to convey the message to Mrs. Nardini so that it could be communicated to Mrs. Rowell, and that unless advised to the contrary, he would come the next day, and would return the child, her mother, and any others that would come, without any expense whatever to them. Mrs. Jones conveyed the message and Mrs. Rowell received the request. At first Mrs. Rowell was leery of the trip, believing that it was a trick, but later she relented in fear that the grandmother was actually in a bad way, and consented to take the child to Mississippi. The next morning about 9:30 or 10:00 o'clock Mc-Clellan came in an automobile, and Mrs. Rowell, with Connie, and Mrs. Nardini, with her small child, none of whom had any other business in Mississippi, accompanied him to his home in Boyle, where the grandmother was living. About 3:15 that afternoon, within fifteen minutes after their arrival, while they were waiting ostensibly for the little girl to see her grandmother, the sheriff of the county appeared, took the child into his custody, and served a copy of the writ and summons on Mrs. Rowell. McClellan admitted, under cross examination, that his petition had been prepared and filed before he left for Bossier City that morning.

This should be said by way of background of the case: On September 5, 1950, Hazel Blaine, who was then deaf and dumb, but has now recovered about fifty percent of her hearing, and McClellan were married. The child was born to the marriage on January 17, 1952. Thereafter, on October 14th, she filed suit for a divorce, charging desertion, and on October 28, 1952, the Chancery Court of the Second Judicial District of Bolivar County awarded her a divorce, the custody of the child, and support for the child in the amount of $60 per month. In November

following, the parties contracted second marriages, Mrs. McClellan to Richard E. Wells and Mr. McClellan to Miss Gloria Guerieri.

On the merits it was developed that the Wells, with little Connie, moved to Virginia where they had serious marital difficulties. It was even charged that Wells sexually abused the child. Finally the question of the suitability of Mrs. Wells to have custody of Connie reached the Juvenile and Domestic Relations Court. But, when a trial was held in the Circuit Court of Henrico County, the jury found that the child should not be taken from the custody of her mother. McClellan employed counsel, was present, and participated as an adversary of Mrs. Wells in that proceeding. Besides, he instituted two habeas corpus proceedings in that jurisdiction to gain the custody of Connie, but the causes were ultimately dismissed. Mrs. Wells obtained a divorce from Wells and returned with her daughter to Louisiana where, on August 22, 1956, she married Carl Rowell, who is deaf and dumb, but who, at the time of the trial, was earning $92 a week. She and her husband lived in Shreveport, just across the river from Bossier City, where Mrs. Louise Nardini and Mrs. Inez Blaine, her sister and mother, respectively, lived. On the one hand, there was evidence that the father could better provide for the needs of Connie than her mother. On the other hand, there was evidence that the child would be properly cared for in the custody of her mother.

At the conclusion of the vacation hearing, the chancellor awarded the temporary custody of the child to the father, but directed the attorneys to file briefs with him on the question of jurisdiction for final decision at the next regular term of the court.

Thereafter, on January 7, 1957, the chancellor made a written finding of fact that the evidence proved beyond any doubt that McClellan had failed in other jurisdictions to get custody of the child; that he knew that he would have to have the child within the jurisdiction of the trial court; that he contrived and made plans

to get her into Mississippi and had all pleadings prepared before he left for Louisiana; that he kept secret from Mrs. Rowell his real intentions; that shortly after the arrival of Mrs. Rowell and Connie at his home, the writ was served; and that the court would not take jurisdiction and grant the relief prayed for on such a trick and subterfuge. He therefore dismissed the proceeding, ordered the child released to her mother, and declined to grant supersedeas for an appeal. Subsequently, a Justice of this Court granted supersedeas to this Court, and his appeal was perfected.

21 C. J. S., Courts, Section 83, p. 124, is in part as follows: ''Service obtained by fraud or improper means. It is well established as a general rule that in a civil case a court will not take jurisdiction based on a service of process on a defendant who was brought within the reach of its process wrongfully or fraudulently, or by deceit or any other improper device, provided, of course, the wrong or deceit is chargeable to plaintiff. · This rule is based not on a lack of jurisdiction but on the view that it is improper for a court to exercise a jurisdiction so obtained.''

42 Am. Jur., Process, Section 35, p. 32, is in part as follows: ''Personal service of process, if procured by fraud, trickery, or artifice is not sufficient to give a court jurisdiction over the person thus served, and service will be set aside upon proper application. Relief is accorded in such cases not because, by reason of the fraud, the court did not get jurisdition of the person of the defendant by the service, but on the ground that the court will not exercise its jurisdiction in favor of one who has obtained service on his summons by unlawful means. Thus, if a person resident outside the jurisdiction of the court and the reach of its process is inveigled, enticed, or induced, by any false representation, deceitful contrivance, or wrongful device for which the plaintiff is responsible, to come within the jurisdiction of the court

for the purpose of obtaining service of process on him in an action brought against him in such court, process served upon him through such improper means is invalid, and upon proof of such fact the court will, on motion, set it aside.''

In Nicholson v. Gulf, Mobile and Northern Railroad Company, 177 Miss. 844, 172 So. 306, this Court cited with approval the following quotation from 15 C. J. 800, as follows: ''It is well established as a general rule that in a civil case a court will not take jurisdiction based on a service of process on a defendant who was brought within the reach of its process wrongfully or fraudulently, or by deceit or any other improper device, provided of course the wrong or deceit is chargeable to plaintiff. This rule is based not on a lack of jurisdiction but on the view that is is improper for a court to exercise a jurisdiction so obtained.'' It was commented in the opinion that this text was supported by cases from many jurisdictions, including the Supreme Court of the United States.

 Consequently it is obvious that the learned chancellor properly dismissed the proceeding.

It is unnecessary to deal with the appellant's contention that the trial court, by reason of Section 2743, Code of 1942 Annotated, had continuing jurisdiction over this matter. Assuming but not deciding that this premise is valid without respect to the litigation in Virginia, still, on account of the trick, device and fraud, by which the appellee was decoyed into the State, there was no proper process to bring her and her child before the court.

From which it follows that the decree of the trial court must be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.